```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
JOSEPH J. GIORDANO,

                Plaintiff,

                v.                          MEMORANDUM AND DECISION
                                            03-CV-5672(JS)(AKT)
JOHN B. THOMSON, JR., THOMSON
INDUSTRIES, INC., and DANAHER
CORPORATION,

                Defendants.
----------------------------------------x
```

Appearances:

For Plaintiff:      William Dan Boone, Esq.
                    Bolin & Boone
                    30 Lincoln Place
                    30 West 63rd Street, Box 23U
                    New York, New York 10023

For Defendants:     John T. Morin, Esq.
                    Jennifer L. Marlborough, Esq.
                    Wormser, Kiely, Galef & Jacobs, LLP
                    825 Third Avenue, 26th Floor
                    New York, New York 10022

SEYBERT, District Judge:

## **INTRODUCTION**

Plaintiff, Joseph J. Giordano ("Plaintiff"), seeks damages from the Defendants for the following five claims: (1) denial of severance benefits pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), (2) retaliatory interference with attainment of severance benefits under ERISA § 510, (3) breach of contract for his bonus, (4) breach of contract for lack of salary, and (5) unjust enrichment. Plaintiff also seeks ERISA penalties pursuant to ERISA § 502(c). For the reasons below, the Court RULES in favor of Defendants.

**DISCUSSION**

The Court presided over the liability phase of the instant action in a seven-day bench trial from October 10 until October 19, 2006. Both parties presented witnesses, documents, and exhibits. Based upon the evidence and arguments presented, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent that any of the findings of fact may be deemed conclusions of law, they also shall be considered conclusions. Likewise, to the extent that any of the conclusions of law may be deemed findings of fact, they shall be considered findings. See Miller v. Fenton, 474 U.S. 104, 113-14, 106 S. Ct. 445, 451-52, 88 L. Ed. 2d 405, 413-14 (1985) (noting the difficulty, at times, of distinguishing findings of fact from conclusions of law).

I. AGREED STIPULATIONS OR STATEMENTS OF LAW AND FACT

The parties agree on the following statement of facts. Defendant John B. Thomson, Jr. ("Thomson") was the sole shareholder of Defendant Thomson Industries, Inc. ("TII") until October 2002 when Defendant Danaher Corporation ("Danaher") acquired TII. From 1993 until 2000, Plaintiff served as an independent part-time financial consultant to Thomson and TII for an annual retainer of $250,000 per year. On May 24, 2000, Plaintiff became TII's acting chief financial officer ("CFO"). On August 24, 2000, Plaintiff became a TII salaried employee, effective September 1, 2000, on a

temporary part-time basis for $250,000 a year. From September 1, 2000, forward, TII's financial condition worsened. On October 17, 2002, Plaintiff was fired by letter, which did not state the reasons for termination. (3d Am. Joint Pre Trial Order, filed Sept. 25, 2006, at 8-10.) The remaining facts are determined below based on the presentation of facts at the bench trial.

II. <u>FINDINGS OF FACT</u>

At the outset, the Court notes that at the end of Plaintiff's case, this Court granted in part Defendants' motion for a directed verdict. The Court found that the facts as stated by Plaintiff did not support a finding that he was entitled to SERP benefits for the year 2002. Further, Plaintiff agreed that the facts he presented did not support a breach of contract claim for any bonus; the Court dismissed Plaintiff's third claim for a bonus on a breach of contract theory. Accordingly, the Court's findings of fact pertain only to the remaining claims - none dealing with SERP benefits for 2002 and/or payment of a bonus on a breach of contract theory.

    A.   <u>Count I: Denial of Severance Benefits</u>

To recover for failure to pay benefits, "a plaintiff must (1) show that the plan is covered by ERISA, (2) establish his status as a participant or beneficiary, and (3) demonstrate that defendant has failed to comply with the terms of the plan." <u>Giordano v. Thomson</u>, 438 F. Supp. 2d 35, 44 (E.D.N.Y. 2005)

(citations omitted). When a plan administrator has discretionary authority to interpret a plan, a plaintiff must show that his denial of benefits was arbitrary and capricious. See id.

The Court finds that in this case, TII's severance policy and practice was that Patrick Mazzeo ("Mazzeo"), TII's Senior Vice President of Human Resources, had the discretion to decide who received severance benefits and how much "on a case-by-case basis." (Tr. 206:11-16.) One of Mazzeo's responsibilities was to administer the severance practices for TII subject to consultation with Dr. Alex N. Beavers ("Beavers"), TII's chief executive officer. (Tr. 606:13-21.) Mazzeo testified that when an employee was terminated for cause, no severance package was provided. (Tr. 595:17-21.) TII's downward financial spiral also affected Mazzeo's discretion in how much he could provide to employees in terms of severance pay. (Tr. 598:9-12.)

Considering TII's financial straits, the Court finds that TII's decision not to provide severance pay to Plaintiff was not arbitrary and capricious. Plaintiff's immediate predecessor as CFO for TII was Mr. Bart Polster ("Polster") who left the company in 1999. (Tr. 646:12-18.) Mr. Polster had been with TII for twenty years, received a salary of approximately $170,000, and was given a severance payment equal to approximately eight weeks' pay. (Tr. 646:18-25; 647:1-11.) Plaintiff, on the other hand, acted as part-time CFO, received an annual salary of $250,000, and acted as CFO

for approximately two years.

Under TII's financial circumstances, Mazzeo's discretion over TII's severance policies and practices, and the severance package provided to Plaintiff's immediate predecessor CFO, the Court finds that TII's denial of severance benefits to Plaintiff was not arbitrary and capricious. Accordingly, the Court dismisses Plaintiff's first claim for denial of severance benefits.

B.  Count II: Retaliatory Interference With Denial Of Benefits

To succeed on a retaliation claim under Section 510 of ERISA, a plaintiff must prove that (1) he was engaged in a protected activity, (2) the employer was aware of the employee's participation in a protected activity, (3) the employer took adverse employment action against the employee, and (4) the protected activity and adverse action are causally linked. See id. at 45-46.

The Court finds that when Plaintiff took the time to think about signing the Release, he was engaged in a protected activity. Second, the Court finds that TII was aware that Plaintiff was engaged in a protected activity. Third, the Court finds that TII fired Plaintiff and this indeed amounts to an adverse employment action. The only remaining question of fact then is whether the adverse employment action is causally linked to the protected activity.

The Court finds that TII terminated Plaintiff's

employment for cause. John Thomson and Keith Pinter instructed Mazzeo to prepare a termination letter for Plaintiff because Plaintiff refused to cooperate with TII for the Danaher closing, did not attend meetings, or sign necessary documents. (Tr. 623:18-21.) Because of Plaintiff's conduct, closing documents had to be re-done, certain closing events were pushed back, and Plaintiff was taking advantage of his position of authority. (Tr. 623:22-25;624:1.)

Accordingly, the Court finds that TII's adverse action of terminating Plaintiff's employment was causally linked to his refusal to cooperate with TII for the Danaher closing and not with Plaintiff's reflection over signing the Release. The Court thus dismisses Plaintiff's second claim for retaliatory interference with denial of benefits.

    C.   <u>Count IV: Breach Of Contract & Implied Contract For Salary</u>

To successfully make a breach of contract claim in New York, a plaintiff must demonstrate (1) formation of a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) damage sustained. <u>Furia v. Furia</u>, 116 A.D.2d 694, 695 (2d Dep't 1986); <u>see</u> <u>also</u> <u>Am. Home Prod. Corp. v. CAMBR Co., Inc.</u>, No. 00-CV-2021, 2001 WL 79903, at *4 (S.D.N.Y. Jan. 30, 2001). Because no one is expected to labor without hire, an implied contract is established when services are rendered at the request of the recipient or under circumstances

6

from which it can fairly be inferred that both parties expected that the services would be compensated. Shapira v. United Med. Serv., Inc., 15 N.Y.2d 200, 209-210 (1965); Fox v. Arctic Placer Mining & Milling Co., 229 N.Y. 124, 128 (1920). "[An implied contract] is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct." Sharp v. Patterson, No. 03-CV-8772, 2004 WL 2480426, at *8 (S.D.N.Y. Nov. 3, 2004) (citing Jemzura v. Jemzura, 36 N.Y.2d 496, 504 (1975)).

The Court finds that only one contract existed between TII and Plaintiff: the Agreement dated August 24, 2000, stating the employment terms of Plaintiff. That Agreement stated that Plaintiff would work as a part-time temporary chief financial officer, effective September 1, 2000. For this work, TII would pay Plaintiff an annual base salary of $250,000. Plaintiff signed this Agreement on September 1, 2000. (Pl.'s Ex. 3.)

Plaintiff points to the record, in which Thomson states that Plaintiff went from being a part-time CFO to a full-time CFO in October 2000. (Tr. 1087-88.) Plaintiff argues that this is somehow proof that Thomson also promised to pay Plaintiff twice his salary for his work as a full-time CFO. However, Thomson never remembered making a promise to pay Plaintiff $500,000 per year. (Tr. 1013:13-22.) Notwithstanding a supposed shift from part time to full time work, the Court finds Defendants' statement of facts

7

more credible.  Defendants maintained Plaintiff's employment and expense reports, and such data clearly shows that Plaintiff worked part time in Port Washington for TII.  (Defs.' Exs. MM, MM(1).) Plaintiff's expense reports also demonstrated that one month prior to the Danaher closing, Plaintiff was vacationing at a spa in Vermont and a resort in Bermuda.  (Id.; Defs.' Ex. MM(2).)

Accordingly, the Court finds that Plaintiff's "make whole" breach of contract claim cannot stand.  The Court cannot discern the making of any contract for Plaintiff's supposed full-time CFO position with an alleged salary of $500,000.  Further, the Court cannot infer from the circumstances that Plaintiff labored under an implied contract.  Lastly, Plaintiff did not work full time in 2000, 2001, or 2002.

### D. Count V: Unjust Enrichment

A plaintiff makes a successful claim for unjust enrichment in New York when he demonstrates that (1) defendant received services provided by plaintiff, (2) defendant benefitted from the receipt of the services, and (3) under principles of equity and good conscience, defendant should be required to pay for the services. Golden Pacific Bancorp v. Fed. Deposit Ins. Corp., 375 F.3d 196, 203 (2d Cir. 2004)(citing Lake Minnewaska Mountain Houses, Inc. v. Rekis, 259 A.D.2d 797, 798 (3d Dep't 1999)); see also Bongat v. Fairview Nursing Care Ctr., Inc., 341 F. Supp. 2d 181, 188 (E.D.N.Y. 2004).

As explained above, the Court finds that Plaintiff was adequately compensated for his services. Plaintiff did not render anymore services than appropriate part-time CFO work. Accordingly, the Court dismisses Plaintiff's last claim of unjust enrichment. Plaintiff may have provided some personal work for Thomson, but this was within the scope of work Plaintiff carved out for himself, as detailed in Exhibit 4 of Plaintiff's trial exhibits. (Pl.'s Ex. 4.) The Court cannot say that Plaintiff was not compensated for such services when Plaintiff only worked part of the year and received $250,000 for his work.

    E.    <u>Count VI: Civil Penalty For Failure To Produce Documents Under ERISA Section 502(c)</u>

To successfully pursue a claim under ERISA § 502(c), 29 U.S.C. § 1132(c), a plaintiff must demonstrate that the administrator of an ERISA plan failed to comply with plaintiff's request for information within 30 days of receiving the inquiry. <u>Schultz v. Stoner</u>, 308 F. Supp. 2d 289, 308 (S.D.N.Y. 2004). Under ERISA, the term "administrator" is defined as "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16)(A); <u>see also</u> <u>Zito v. SBC Pension Benefit Plan</u>, No. 02-CV-277, 2002 WL 31060363, at *3 (D. Conn. July

9

18, 2002).

A plan administrator may not be held liable for requests directed to someone other than the administrator. Hiney Printing Co. v. Brantner, 243 F.3d 956, 961 (6th Cir. 2001). Moreover, in the Second Circuit, a Plaintiff may not argue that the person to whom he directed a request was a de facto administrator. Crocco v. Xerox Corp., 137 F. 3d 105, 107 (2d Cir. 1998). An administrator's noncompliance will be excused when "failure or refusal results from matters reasonably beyond the control of the administrator." Klecher v. Met Life Ins. Co., No. 01-CV-9566, 2003 WL 21314033, at *9 (S.D.N.Y. June 6, 2003) (denying liability for an ERISA plan administrator for untimely delivery of requested documents, when a claims administrator failed to convey notice that the request had been made, and where the plan administrator timely produced documents once having received notice).

The Court rejects Defendants' argument that Plaintiff - and not Plaintiff's attorney - must request the ERISA benefits information. Defendants cited case law from the Sixth Circuit to support their contention. (Defs.' Prop. Findings Of Fact 20.) However, the case law in this Circuit states the exact opposite of what Defendants propose. "ERISA participants may make written requests to administrators for information through agents or representatives." Proujansky v. Blau, 92-CV-8700, 2001 U.S. Dist. LEXIS 12694, at *33 (S.D.N.Y. Aug. 22, 2001) (citing Algie v. RCA

Global Commc'n, Inc., 891 F. Supp. 839, 869 n.22 (S.D.N.Y. 1994) ("The fact that the request was made by the former employee's attorney does not exempt it from the requirements of the statute.")).

The only issue is whether Defendants' law firm had a fiduciary duty to forward such request for ERISA information to the appropriate person. Plaintiff cites the case of Pension Benefit Guaranty Corp. v. Solmsen, 671 F. Supp. 938 (E.D.N.Y. 1987) to support his argument that Defendants' attorney had a fiduciary duty to forward the request for ERISA information to the successor administrator of the Plan. (Pl.'s Prop. Findings Of Fact 14.) But the Solmsen court did not deal with requests for ERISA information made to a Plan Administrator's attorney; that court dealt with a former sole shareholder of a defunct company who did not forward funds to the plan. See Solmsen, 671 F. Supp. at 945-46.

At trial, Plaintiff conceded that Plaintiff never notified the Plan Administrator about the request for information. (Tr. 14:23-25.) Further, Plaintiff and Plaintiff's counsel admitted that they did not know who the appropriate person was to request such documents and concluded Defendants' attorneys would be the best person(s) to whom to send the documents. (Tr. 15:13-25.)

Plaintiff's case law does not support the argument that Defendants' attorneys had a fiduciary duties to forward the request on to its clients. Only the Plan, the Plan Administrator, and its

trustees can be held liable for Plaintiff's sixth claim.  See
Crocco, 137 F.3d at 109.  Accordingly, the Court cannot hold
Defendants' counsel liable for lack of forwarding a request for
documents to the proper party.

## **CONCLUSION**

Based on the above findings of fact and conclusions of law, this Court RULES in favor of the Defendants.  Plaintiff's claims against Defendants are dismissed with prejudice.  The Clerk of the Court is ordered to mark this matter as closed.


SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
       May    29    , 2007